**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

———————————————————— x

Jimmy Mustakis, individually on        :
behalf of himself and all others similarly   :
situated,                               :    Case No.
                                      :
         Plaintiffs,            :
v.                                    :
                                      :    **CLASS ACTION COMPLAINT**
Sanofi US,                      :
                                      :    <u>**JURY TRIAL DEMANDED**</u>
                                      :
         Defendant.          :
                                      :

———————————————————— x

Plaintiff, Jimmy Mustakis (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

<u>**NATURE OF THE ACTION**</u>

1.     This action seeks to remedy the deceptive and misleading business practices of Sanofi US (hereinafter "Defendant") with respect to the marketing and sales of Defendant Sanofi US's Selsun Blue Naturals Antidandruff Shampoo product throughout the State of New York and throughout the country (hereinafter the "Product").

2.     Defendant manufactures, sells, and distributes the Product using a marketing and advertising campaign centered around claims that appeal to health-conscious consumers, i.e., that its Product is "Natural."  However, Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Product contains non-natural, synthetic ingredients.

1

3.      Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Product is "Natural" when purchasing the Product.  Plaintiff and Class Members paid a premium for the Product based upon its "Natural" representation.  Given that Plaintiff and Class Members paid a premium for the Product based on Defendant's misrepresentations that it is "Natural," Plaintiff and Class Members suffered an injury in the amount of the premium paid.

4.      Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350 and the Magnuson-Moss Warranty Act.  Defendant breached and continues to breach its warranties regarding the Product.  Defendant has been and continues to be unjustly enriched.  Accordingly, Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Product during the applicable statute of limitations period (the "Class Period.)"

## FACTUAL BACKGROUND

5.      Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products and everyday household products.  Companies such as Defendant have capitalized on consumers' desire for purportedly "natural products."  Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients.  In 2015, sales of natural products grew 9.5% to $180 billion.[1]  Reasonable consumers, including Plaintiff and

---

[1] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ,* FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6; *see also*  Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017),

Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

6.      Despite the Product containing a number of synthetic ingredients, Defendant markets the Product as being "Natural."  The Product's labeling is depicted below:

---

http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025); *Natural living: The next frontier for growth? [NEXT Forecast 2017]*, NEW HOPE NTWORK (December 20, 2016), http://www.newhope.com/beauty-and-lifestyle/natural-living-next-frontier-growth-next-forecast-2017.

**Selsun Blue Naturals Antidandruff Shampoo**



**Synthetic Ingredients:**

Cocamidopropyl Betaine
Tocopheryl Acetate
Panthenol
Benzyl Alcohol
Lauryl Glucoside
Potassium Hydroxide
Citric Acid
Disodium EDTA
Propylene Glycol

4

7.      Defendant's representation that the Product is "Natural," is false, misleading, and deceptive because the Product contains multiple ingredients that are, as explained below, synthetic.

a.   **Tocopheryl Acetate** is a synthetic, inert ingredient used pre and post-harvest as an ingredient in pesticide formulations applied to growing crops or to raw agricultural commodities after harvest. *See* 40 C.F.R. §180.910.

b.   **Disodium EDTA** is a synthetic chelating agent. [2]

c.   **Cocamidopropyl Betaine** is a synthetic surfactant.[3]

d.   **Panthenol** is a synthetic compound, produced by adding propanolamine to optically active alpha, gamma-dihydroxy-beta,beta-dimethylbutyrolacton, such as by combining 3-amino-1-propanolamine with the lactone of 2,4-dihydroxy-3,3-dimethyl butyric acid or the panthotheinc lactone of 2,4-dihydroxy-3,3-dimethyl butyric acid.

e.   **Benzyl Alcohol** is a synthetic ingredient used as a solvent and preservative; has been associated with contact allergies.[4]

f.   **Lauryl Glucoside** is a synthetic surfactant or dispersant.  It is synthesized by reacting an alcohol or mixture of alcohols with a cyclic form of glucose or glucose polymers.[5]

---

[2] http://www.ewg.org/skindeep/ingredient/702146/DISODIUM_EDTA/
[3] http://www.fda.gov/downloads/CombinationProducts/JurisdictionalInformation/RFDJurisdictionalDecisions/RedactedDecisionLetters/UCM113805.pdf
[4] http://www.ewg.org/skindeep/ingredient/700697/BENZYL_ALCOHOL/
[5] http://www.ewg.org/skindeep/ingredient/703445/LAURYL_GLUCOSIDE/.

g. **Citric Acid** is (2-hydroxy-propane-1, 2,3-tricarboxylic acid) is a synthetic substance. While the chemical's name has the word "citric" in it, citric acid is no longer extracted from the citrus fruit but industrially manufactured by fermenting certain genetically mutant strains of the black mold fungus, *Aspergillus niger*.

h. **Potassium Hydroxide** is also known as caustic potash, potash lye, and potassa. It is a white, highly deliquescent caustic solid, which is marketed in several forms, including pellets, flakes, sticks, lumps, and powders. Potassium Hydroxide is obtained commercially from the electrolysis of potassium chloride solution in the presence of a porous diaphragm. *See* 21 C.F.R. § 184.1631.

i. **Propylene Glycol** (1,2-propanediol). It does not occur in nature. Propylene Glycol is manufactured by treating propylene with chlorinated water to form the chlorohydrin which is converted to the glycol by treatment with sodium carbonate solution. It is also prepared by heating glycerol with sodium hydroxide. *See* 21 C.F.R. §184.1666.

8. Whether Defendant's labeling of the Product as natural is deceptive is judged by whether it would deceive or mislead a reasonable person. To assist in ascertaining what a reasonable consumer believes the term natural means, one can look to the regulatory agencies for their guidance.

9. In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural). In accordance with this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is

6

manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter. **(Exhibit A).**

10.     Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources . . . ." 7 U.S.C. § 6502 (21).

11.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

12.     Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.  That is why, even though the ingredients listed above are identified on the back of the Product's packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

13.     Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Product in order to confirm or debunk Defendant's prominent claims, representations, and warranties that the Product is "Natural."

7

14.     Defendant did not disclose that the above listed ingredients are synthetic ingredients.  A reasonable consumer understands Defendant's "Natural" claims to mean that the Product is "Natural" and does not contain synthetic ingredients.

15.     Defendant has thus violated, *inter alia*,  NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label or other thing, containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article, which to its knowledge is falsely described or indicated upon any such package, or vessel containing the same, or label thereupon, in any of the particulars specified.

16.     Consumers rely on label representations and information in making purchasing decisions.

17.     The marketing of the Product as "Natural" in a prominent location on the label of the Product, throughout the Class Period, evidences Defendant's awareness that "Natural" claims are material to consumers.

18.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

19.     Plaintiff and the Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

8

20. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class members.

21. In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a Product labeled as being "Natural" over comparable products not so labeled.

22. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class members in that they:

    **a.** Paid a sum of money for a Product that was not what Defendant represented;

    **b.** Paid a premium price for a Product that was not what Defendant represented;

    **c.** Were deprived of the benefit of the bargain because the Product they purchased was different from what Defendant warranted; and

    **d.** Were deprived of the benefit of the bargain because the Product they purchased had less value than what Defendant represented.

23. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Product they purchased.

24. Plaintiff and the Class members paid for a Product that is "Natural" but received a Product that is not "Natural." The Product Plaintiff and the Class members received was worth less than the Product for which they paid.

9

25.     Plaintiff and the Class members all paid money for the Product. However, Plaintiff and the Class members did not obtain the full value of the advertised Product due to Defendant's misrepresentations and omissions. Plaintiff and the Class members purchased, purchased more of, and/or paid more for, the Product than they would have had they known the truth about the Product. Consequently, Plaintiff and the Class members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the State of New York, Defendant Sanofi US is a citizen of the State of New Jersey; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

27.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

28.     Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the State of New York.  A substantial part of the events or omissions giving rise to the classes' claims occurred in this District.

## PARTIES

### Plaintiff

29.     Plaintiff is an individual consumer who, at all times material hereto, was a citizen of the State of New York.  Plaintiff Purchased the Product During the Class Period.  The packaging of the Product Plaintiff purchased contained the representation that it is "Natural." Plaintiff believes that products that are labeled as "Natural" do not contain synthetic ingredients. Plaintiff believes a synthetic ingredient is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources.  If the Product actually was "Natural," as represented on the Product's label, Plaintiff would purchase the Product in the immediate future.

30.     Had Defendant not made the false, misleading, and deceptive representation that the Product was "Natural," Plaintiff would not have been willing to pay the same amount for the Product, and, consequently, would not have been willing to purchase the Product. Plaintiff purchased, purchased more of, and/or paid more for, the Product than he would have had he known the truth about the Product. The Product Plaintiff received was worth less than the Product for which he paid.  Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

### Defendant

31.     Defendant, Sanofi US is a corporation with its principal place of business in Bridgewater, New Jersey.  Defendant manufactures, markets, advertises and distributes the Product

11

throughout the United States.  Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Product.

## CLASS ALLEGATIONS

32.     Plaintiff brings this matter on behalf of himself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

33.     The Class is defined as all consumers who purchased the Product anywhere in the United States during the Class Period (the "Class.")

34.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Product in the State of New York at any time during the Class Period (the "New York Subclass.")

35.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

36.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

37.     Numerosity: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

38.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.   Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Product;

b.   Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Product;

c.   Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Product;

d.   Whether Defendant's false and misleading statements concerning its Product were likely to deceive the public;

e.   Whether Plaintiff and the Class are entitled to injunctive relief;

f.   Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

39.     <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Product.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

40.     <u>Adequacy</u>: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent; his consumer fraud claims

are common to all members of the Class and he has a strong interest in vindicating his rights; he has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action.

41.    <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

42.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

   a.   The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

   b.   The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

   c.   When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

14

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.  It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising to purchase its Product as "Natural."

43.  Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**INJUNCTIVE CLASS RELIEF**

44.  Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here, Defendant has engaged in conduct resulting in misleading consumers about ingredients in its Product.  Since Defendant's conduct has been uniformly directed at all

15

consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct. Plaintiff would purchase the Product again if the ingredients were changed so that they indeed were "Natural."

45.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

   a.  Numerosity: Individual joinder of the injunctive Class Members would be wholly impracticable.  Defendant's Product has been purchased by thousands of people throughout the United States;

   b.  Commonality: Questions of law and fact are common to members of the Class. Defendant's misconduct was uniformly directed at all consumers.  Thus, all members of the Class have a common cause against Defendant to stop its misleading conduct through an injunction.  Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire Class.  Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

      i.  Resolution of the issues presented in the 23(b)(3) class;

      ii. Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive product marketing and labeling; and

16

   iii. Whether, on equitable grounds, Defendant should be prevented from continuing to deceptively mislabel its Product as "Natural."

 c. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class because his claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading marketing, labeling, and advertising practices). Plaintiff is a typical representative of the Class because, like all members of the injunctive Class, he purchased Defendant's Product which was sold unfairly and deceptively to consumers throughout the United States.

 d. <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class. His consumer protection claims are common to all members of the injunctive Class and he has a strong interest in vindicating his rights. In addition, Plaintiff and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

46. The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class. Certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendant has marketed its Product using the same misleading and deceptive labeling to all of the Class Members). Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendant would be prevented from continuing its misleading and deceptive marketing practices and would be required to honestly disclose to consumers the nature

of the contents of its Product. Plaintiff would purchase the Product again if the ingredients were changed so that they indeed were "Natural."

## FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

47.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

48.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

49.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Product.

50.     There is no adequate remedy at law.

51.     Defendant misleadingly, inaccurately, and deceptively advertises and markets its Product to consumers.

52.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Product as being "Natural" —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Product and to use the Product when they otherwise would not have. Defendant made

its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

53.     Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for a product that was—contrary to Defendant's representations— not "Natural." Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

54.     Defendant's advertising and Product's packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Product and to pay a premium price for it.

55.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

56.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 350
**(On Behalf of Plaintiff and the New York Subclass Members)**

57.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

58.   N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

59.   N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

60.   Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Product inasmuch as they misrepresent that the Product is "Natural."

61.   Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Product which was—contrary to Defendant's representations—not "Natural."  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

62.   Defendant's advertising, packaging and product's labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Product.

63.   Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

64.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

65.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the Product's packaging and labeling.

66.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.   Moreover, all consumers purchasing the Product were and continue to be exposed to Defendant's material misrepresentations.

67.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

68.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

69.     Defendant provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Product is "Natural."

70.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

71.     These affirmations of fact became part of the basis for the bargain and were material to Plaintiff's and Class Members' transactions.

21

72.     Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Product.

73.     Within a reasonable time after they knew or should have known of Defendant's breach, Plaintiff, on behalf of himself and Class Members, placed Defendant on notice of its breach, giving Defendant an opportunity to cure its breach, which it refused to do.

74.     Defendant breached the express warranty because the Product is not "Natural" because it contains synthetic ingredients.

75.     Defendant thereby breached the following state warranty laws:

     a.     Code of Ala. § 7-2-313;

     b.     Alaska Stat. § 45.02.313;

     c.     A.R.S. § 47-2313;

     d.     A.C.A. § 4-2-313;

     e.     Cal. Comm. Code § 2313;

     f.     Colo. Rev. Stat. § 4-2-313;

     g.     Conn. Gen. Stat. § 42a-2-313;

     h.     6 Del. C. § 2-313;

     i.     D.C. Code § 28:2-313;

     j.     Fla. Stat. § 672.313;

     k.     O.C.G.A. § 11-2-313;

     l.     H.R.S. § 490:2-313;

m.      Idaho Code § 28-2-313;

n.      810 I.L.C.S. 5/2-313;

o.      Ind. Code § 26-1-2-313;

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.    N.D. Cent. Code § 41-02-30;

ii.    II. O.R.C. Ann. § 1302.26;

jj.    12A Okl. St. § 2-313;

kk.    Or. Rev. Stat. § 72-3130;

ll.    13 Pa. Rev. Stat. § 72-3130;

mm.    R.I. Gen. Laws § 6A-2-313;

nn.    S.C. Code Ann. § 36-2-313;

oo.    S.D. Codified Laws, § 57A-2-313;

pp.    Tenn. Code Ann. § 47-2-313;

qq.    Tex. Bus. & Com. Code § 2.313;

rr.    Utah Code Ann. § 70A-2-313;

ss.    9A V.S.A. § 2-313;

tt.    Va. Code Ann. § 59.1-504.2;

uu.    Wash. Rev. Code Ann. § 6A.2-313;

vv.    W. Va. Code § 46-2-313;

ww.    Wis. Stat. § 402.313;

xx.    Wyo. Stat. § 34.1-2-313.

76.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Product, in an amount to be proven at trial.

24

### FOURTH CAUSE OF ACTION
### VIOLATION OF THE MAGNUSON-MOSS
### WARRANTY ACT, 15 U.S.C. § 2301 *et seq.*
### (On Behalf of Plaintiff and All Class Members)

77.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78.     Plaintiff brings this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 named Plaintiffs.

79.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

80.     The Product is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

81.     Plaintiff and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

82.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

83.     Defendant represented in writing that the Product is "Natural."

84.     These statements were made in connection with the sale of the Product and relates to the nature of the Product and affirms and promises that the Product is as represented and defect

free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

85.     As alleged herein, Defendant breached the written warranty by selling consumers a Product that is not "Natural."

86.     The Product does not conform to Defendant's written warranty and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.  Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
## COMMON LAW UNJUST ENRICHMENT
### (On Behalf of Plaintiff and All Class Members in the Alternative)

87.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

88.     Plaintiff, on behalf of himself and consumers nationwide, brings a common law claim for unjust enrichment.

89.     Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling its Product while misrepresenting and omitting material facts.

90.     Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Product at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendant's benefit and enrichment.  Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

26

91.     Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Product, which was not as Defendant represented it to be.

92.     Under New York's common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiff's and Class Members' overpayments.

93.     Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, pray for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its practices and to comply with consumer protection statutes nationwide, including New York consumer protection laws;

(c) Awarding monetary damages, including treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

Dated:  December 4, 2020

**THE SULTZER LAW GROUP P.C.**

Jason P. Sultzer /s/

By: _____

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Tel:  (212) 643-0500
Fax:  (212) 253-4272
Email:  *mreese@reesellp.com*

*Counsel for Plaintiff and the Class*