FILED
CLERK

3:01 pm, Mar 09, 2022

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JIMMY MUSTAKIS, individually and on behalf
of all others similarly situated,

                Plaintiff,

    - against -

CHATTEM, INC.

                Defendant.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**

20-CV-5895 (GRB)(AYS)

**GARY R. BROWN, United States District Judge**:

*"There has been a general consensus of opinion throughout the world that salicylic acid is a very harmful substance . . . ."* – Adulteration of Food: Report, Returns and Statistics of the Inland Revenues of the Dominion of Canada (1907)

      Plaintiff, Jimmy Mustakis, brings this action against defendant Chattem, Inc., the maker of "Selsun Blue Naturals" anti-dandruff shampoo (the "Product"). Alleging that defendant's "Naturals" branding misleads consumers into believing their shampoo contains no synthetic ingredients, plaintiff brings claims under New York General Business Law Section 349 ("GBL § 349"), Section 350 ("GBL § 350") and unjust enrichment. Defendant now moves to dismiss under Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6). For the reasons stated below, the motion to dismiss is granted.

*Procedural History*

      In December 2020, plaintiff commenced this action against Sanofi US. *See* Docket Entry ("DE") 1. On March 4, 2021, the Court held a pre-motion conference regarding an anticipated motion to dismiss. DE 17. Because Sanofi US is not a legal entity and does not manufacture the Product, the Court granted leave to amend the complaint to sue the correct party, Chattem, Inc. *Id.* at 7:13-17; 29:16-24. On March 18, 2021, plaintiff filed an amended complaint against Chattem,

1

Inc. DE 15, Amend. Compl.. Plaintiff brought the action on behalf of himself and those similarly situated, seeking certification of both a nationwide class and a New York subclass. *Id.*, ¶¶ 34-35. On May 26, 2021, defendant filed the instant motion to dismiss pursuant to Rule 12. DE 19.[1]

*Facts*

Plaintiff is an individual consumer who, at all relevant times, was a citizen of New York. DE 15, Amend. Compl., ¶ 29. Defendant, Chattem, Inc., is a Tennessee corporation with its principal place of business in Bridgewater, New Jersey. *Id.*, ¶ 32. Defendant manufactures, markets, and distributes "Selsun Blue Naturals" throughout the US. *Id.*, ¶ 32. Plaintiff purchased the Product multiple times in 2020 at various Walmart locations, including Long Island. *Id.*, ¶ 29.

The Product, seen below, is an anti-dandruff shampoo which treats dandruff and itchy dry scalp. *Id.*, ¶¶ 1, 6. The term "Naturals" appears prominently on the front label in green font. *Id.*, ¶ 6. Directly below, the container states, "Antidandruff Shampoo / Salicylic acid 3%." *Id.* Notably, the font used to display the phrase "Antidandruff Shampoo" is the same size, style, color and prominence as that employed for "Salicylic acid 3%."

---

[1] Plaintiff has withdrawn his request for injunctive relief. DE 20, Pl. Opp. at 23.



Selsun Blue Naturals Antidandruff Shampoo

Synthetic Ingredients:

Cocamidopropyl Betaine
Tocopheryl Acetate
Panthenol
Benzyl Alcohol
Lauryl Glucoside
Potassium Hydroxide
Citric Acid
Disodium EDTA
Propylene Glycol

*Id.* While the Product displays the word "Naturals" on the front label, the Product contains synthetic ingredients including disodium EDTA, panthenol, and benzyl alcohol. *Id.* The back

3

label,[2] seen below, lists under "Drug Facts" the active ingredient salicylic acid, which occupies a position of greater prominence than the remaining ingredients.



DE 19-2 at 4.

Plaintiff paid $6.98 for the Product, and alleges that he would not have been willing to pay the same amount for the Product, and, consequently, would not have been willing to purchase the Product, without the "Naturals" designation.  DE 15, ¶¶ 29, 30.

*Standard of Review*

Motions to dismiss are decided under the well-established standard of review for such matters, as discussed in *Burris v. Nassau County District Attorney*, No. 14-5540 (JFB) (GRB),

---

[2] Although the back label of the Product is not in the complaint but rather is attached as an exhibit to defendant's motion to dismiss, it may properly be considered because it is incorporated by reference in the complaint.  *See* DE 15, Amend. Compl., ¶ 6 (listing alleged synthetic ingredients on back label).  "A complaint is deemed to include . . . materials incorporated in it by reference . . . ."  *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted).


2017 WL 9485714, at *3–4 (E.D.N.Y. Jan. 12, 2017), *adopted by* 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017), and incorporated by reference herein. The gravamen of that standard is whether, assuming the allegations of the complaint to be true, the complaint sets forth factual material to render the claims plausible.

*New York General Business Law §§ 349, 350*

In *Scholder v. Sioux Honey Ass'n Coop.*, No. CV 16-5369 (GRB), 2022 WL 125742, at *2–3 (E.D.N.Y. Jan. 13, 2022), this Court summarized the applicable legal standards for claims arising under GBL § 349 and GBL § 350:

> Section 349 of the New York General Business Law ("GBL") prohibits "deceptive acts and practices in the conduct of any business, trade or commerce or in furnishing of any service." N.Y. Gen. Bus. Law § 349. A deceptive act or practice is one that is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 350. False advertising means "advertising, including labeling ... if such advertising is misleading in a material respect." *Id.* § 350-a(1). Both provisions permit "any person who has been injured by reason of any violation" thereof to bring an action to recover damages or to enjoin the deceptive act or practice, or both. *Id.* §§ 349(h), 350-e(3).
>
> "The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to § 349." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002); *see also Gristede's Foods Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 451 (E.D.N.Y. 2007) (the standards under Sections 349 and 350 are "substantively identical"). To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2009)).

*Sioux Honey*, 2022 WL 125742, at *2–3.

The key element in dispute here is whether the product label is materially misleading. Whether a product label is materially misleading may be determined as a matter of law by the Court. *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (per curiam). To determine whether a product label is materially misleading, the Court asks whether "a significant portion of

5

the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled." *Jessani v. Monini N. Am. Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (internal quotation marks and citation omitted) ("plaintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.'"). This objective inquiry focuses on the precise representations made on the product label. *See, e.g.*, *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020) ("Florida's Natural" brand name could not mislead a reasonable consumer into believing the product did not contain traces of herbicide where the packaging did not state it was "pure" or "100% natural"). "[I]n determining whether a reasonable consumer would have been misled . . . context is crucial." *Fink*, 714 F.3d at 742. "[U]nder certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Id.* (citation omitted). At the same time, however, "[r]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth . . . ." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) (citation omitted).

Evaluating the product label as a whole and after evaluating the allegations, the Court concludes it is implausible that a reasonable consumer would be misled into believing the Product contains no synthetic ingredients. First, the front label clearly states that the Product contains "Salicylic acid 3%" directly besides the words "Antidandruff Shampoo" in font that is the same size, style, color and visual prominence. DE 15, ¶ 6. No reasonable consumer would believe that a product containing three percent salicylic acid is entirely free from synthetic ingredients.[3] Unlike

---

[3] Plaintiff does not allege that salicylic acid is an unnatural ingredient. *See* DE 15, ¶¶ 6-7 (salicylic acid not included in list of synthetic Product ingredients alleged in the complaint). Although defendant's disclaimer defense is premised upon the assumption that the reasonable consumer would believe salicylic acid is artificial, fascinatingly, salicylic acid *can* be obtained from white willow bark and wintergreen leaves. *See* "Salicylic acid," NIH National Library of Medicine, https://pubchem.ncbi.nlm.nih.gov/compound/Salicylic-acid, last accessed March 7, 2022; "Salicylic Acid," American Chemical Society, https://www.acs.org/content/acs/en/molecule-of-the-week/archive/s/salicylic-acid.html, last accessed March 7, 2022. Today, however, salicylic acid is commercially

in *Mantikas v. Kellogg Co.*, where the disclosure of the number of grams of whole grain per serving together with the claim of "WHOLE GRAIN" in large bold font falsely implied that the snack product was entirely or predominantly whole grain, *see* 910 F.3d at 637, here the Product's front label specifies the exact proportion of salicylic acid: three percent.  Second, the product label does not claim "Selsun Blue Naturals" is "all natural" or "100% natural."  Rather, the term "Naturals" appears only in the brand name.  *See Axon*, 813 F. App'x at 705 ("Florida's Natural" brand name is not materially misleading because "natural" only appeared in the brand name and the packaging did not state it was "pure" or "100% natural").  Third, the inactive ingredients on the back label disclose the synthetic ingredients plaintiff complains of as well as a number of natural ingredients such as lavender and rosemary extract, which supports the defendant's use of the term "Naturals."  DE 19-2 at 4.  *See Reyes v. Crystal Farms Refrigerated Distribution Co.*, No. 18-CV-2250(NGG)(RML), 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019) ("made with real butter" is not misleading because the ingredient list states the product contains both butter and margarine).  Finally, the back label states "Drug Facts" in bold font and gives a number of warnings advising users to keep the Product away from children and contact Poison Control if swallowed.  DE 19-2 at 4.

Although a number of courts have found plausible deceptive acts and false advertising claims in cases involving "natural" products, a line must be drawn.  Here, the Product's front label conspicuously discloses that the shampoo is three percent salicylic acid, an ingredient which the reasonable consumer would, it would seem, assume is unnatural.  Plaintiff asserts that he and other

---

biosynthesized from phenylalanine.  *Id.*; *see Leger v. Kalitta*, No. 16-CV-6545 (PKC)(PK), 2018 WL 2057142, at *3 (E.D.N.Y. Jan. 26, 2018) ("[T]he Court may take judicial notice of 'documents retrieved from official government websites.'") (citation omitted); *Mulberry Homes VI, LLC v. Gargiulo*, No. CV 15-1913(DRH)(GRB), 2019 WL 5694133, at *6 n.7 (E.D.N.Y. Aug. 30, 2019) (court may take judicial notice of "confirming information provided by commercial web sites").  Remarkably, the complaint makes allegations concerning "citric acid" noting that although at one time this substance came from citrus fruit, this is no longer the case.  DE 15, ¶ 7(g).

class members were defrauded because they "value natural products for important reasons, including the belief that they are safer and healthier than alternative products." DE 15, ¶ 5. Yet such protestations seem misplaced where the principal ingredient prominently featured on the front of the Product has long been known to be anything but safe and healthy.[4] As the front label of the Product prominently identifies this chemical on the same line as the text which identifies the product in the bottle, it seems implausible that a reasonable consumer could be misled.

Two district courts have found that personal care products using the moniker "Naturals" could mislead consumers as to the presence or predominance of natural ingredients, denying Rule 12 relief as to facially similar GBL claims. *Paulino v. Conopco, Inc.*, 2015 WL 4895234, at *4–6 (E.D.N.Y. 2015) (denying motion to dismiss claim as to "Suave Naturals" branding as to products that "contain primarily unnatural, synthetic ingredients"); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 471–72, 479–80 (S.D.N.Y. 2014) (claim that "'Active Naturals' is deceptive because it conveys to consumers that the Aveeno products are completely natural"). This case is readily distinguishable as the Product here prominently displays, on both the front and back labels, the presence of a synthetic ingredient. *Compare Paulino*, 2015 WL 4895234, at *5 (defendant relying upon "the FDA-mandated list of ingredients on the back of the packaging"); *Goldemberg*, 8 F. Supp. 3d at 479–80 (observing that case featured a label which "exclusively touts one particular aspect of the particular products" along with a website that "focuses exclusively on the natural ingredients found in Aveeno products"). Thus, these cases are inapposite. Finally, many of the cases cited by plaintiff are distinguishable from the instant case because they involve product labels which do not merely contain the word

---

[4] *See Commonwealth v. Kevin*, 202 Pa. 23, 29, 51 A. 594, 596 (1902) ("There was ample evidence, if believed, to warrant the jury in finding that salicylic acid is poisonous, and injurious to the human system. No other conclusion would have been justified by the evidence.").

"natural" in the brand name but instead describe the product as "natural." *See, e.g.*, *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 559 (S.D.N.Y. 2016) (shampoo labelled "all natural," "plant-based," and "no harsh chemicals ever!"); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *1 (E.D.N.Y. Aug. 29, 2013) (snacks labelled "all natural"); *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 (JG) (RML), 2015 WL 5360022, at *1 (E.D.N.Y. Sept. 14, 2015) (root beer labelled "[o]ur brew blends tradition and quality, naturally").

*Unjust Enrichment*

"Under New York law, a plaintiff may prevail on a claim for unjust enrichment by demonstrating (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Nordwind v. Rowland*, 584 F.3d 420, 434 (2d Cir. 2009) (internal quotation marks and citation omitted). The claim "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). Although "an unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim," *id.*, "a plaintiff may plead unjust enrichment in the alternative to a breach of warranty claim[.]" *Axon*, 813 F. App'x at 706.

Plaintiff alleges that defendant's unlawful conduct enabled defendant to realize substantial revenues from the Product to the detriment of plaintiff. DE 15, ¶ 72. As discussed *supra*, because the Court finds that plaintiff has failed to state a claim that defendant's product labelling is materially misleading, plaintiff's unjust enrichment claim is implausible as well. *See Axon*, 813 F. App'x at 706 (dismissing unjust enrichment claim for same reasons as deceptive acts and false

9

advertising claims). Hence, defendant's motion to dismiss the unjust enrichment claim is granted as well.

*Conclusion*

For the reasons stated herein, defendant's motion to dismiss is granted in its entirety.

**SO ORDERED.**

Dated: March 9, 2022
Central Islip, New York

                                                       /s/ Gary R. Brown
                                                      HON. GARY R. BROWN
                                                      UNITED STATES DISTRICT JUDGE